_____

No. 95-3137
No. 95-3230
No. 95-3231

_____

National Automobile Dealers          *
and Associates Retirement            *
Trust; Anthony Ursomarso;            *
Stephen M. Qua; Frank R.             *
Anderson, Jr.; William S. Dodge;*
David E. Gezon; Ray Green;           *
Mark Miller; Jimmy C. Payton;        *
Jack T. Price; Richard R. Smith;*
Frank E. McCarthy,                   *
                                     * Appeals from the United States
                                     * District Court for the
                                     * Eastern District of Missouri.
            Plaintiffs,  *
                                     *
                                     *
Patricia A. Arbeitman; Brooke        *
Ann Arbeitman; Christopher           *
Michael Arbeitman,                   *
                                     *
    Appellee/Cross-Appellants,       *
                                     *
     v.                              *
                                     *
Donna M. Arbeitman,                  *
                                     *
    Appellant/Cross-Appellee.  *


_____


        Submitted:  March 19, 1996

          Filed:  July 10, 1996
          _____


Before MCMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Harold Arbeitman was employed by two Dodge dealerships, Royal Parkway Dodge, Inc. and Royal Gate Dodge, Inc., both of which had pension funds established under the Employee Retirement Income Security Act, 19 U.S.C. §§ 1001-1461 (1994). Harold died and the trustees of both funds filed this interpleader action to determine their liability to Patricia Arbeitman, his first wife from whom he was divorced, who was named as beneficiary in the Royal Parkway plan, and Donna Arbeitman, his surviving spouse. The magistrate judge[1] awarded one-half of the Royal Parkway plan to the named beneficiary, Patricia, and the remaining one-half, as well as all of the benefits to the Royal Gate plan to the surviving spouse, Donna. In the appeal and cross-appeal, Patricia and Donna both claim entitlement to all of both funds. In addition, Patricia and the children from her marriage to Harold claim error in failing to impose a constructive trust on the Royal Parkway funds. We affirm.

Harold Arbeitman died in August 1992. While employed by Royal Parkway Dodge and Royal Gate Dodge, Harold participated in their pension and profit sharing plans.[2]

Harold and Patricia were married in October 1966. They had two children, Brooke and Christopher. On August 27, 1982, Harold designated Patricia as the primary beneficiary of the Royal Parkway plan, with all of his living children as contingent death beneficiaries. He did not designate a death beneficiary for the Royal Gate plan.

An Illinois court dissolved Harold and Patricia's marriage in July 1983 and entered a decree adopting their separation agreement

---

[1]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri, tried the case by consent of the parties.

[2]The terms of the Royal Parkway and Royal Gate plans are the same.

in December 1983. In part, the agreement provided that upon Harold's death, the obligations agreed to by the parties would survive as charges against his estate. Further, Harold also agreed to maintain a life insurance policy sufficient to pay the balance of any support payments owed at the time of his death. Donna and Harold also agreed to relinquish "any right, title or interest in and to any earnings, accumulations, pension plans, profit sharing plans, future investments, money or property of the other . . . ."

Donna and Harold married in August 1987. Before the marriage they entered into a prenuptial property agreement, the validity of which was later upheld by Missouri courts. The agreement listed the separate property of Donna and Harold, and provided that each party agreed to keep and retain sole ownership of all property listed, "free and clear of any title, interests, rights, or claims of the other." Neither plan was listed in Harold's schedule of property.

After his marriage to Donna, Harold and Patricia maintained an amicable relationship. Harold did not change the beneficiary designation on the Royal Parkway Plan. Harold also provided more than the required level of support for Patricia and his children. After Harold's death, Patricia received her last support payment in October 1992. Harold failed to provide a life insurance policy sufficient to satisfy his support obligations under the separation agreement.

Following Harold's death, the Trusts brought this interpleader action to have the court determine who was entitled to receive Harold's benefits under the pension plans. The benefits from the Royal Parkway plan were approximately $83,373, and from the Royal Gate plan, $48,665. The magistrate judge determined that both plans provided that as surviving spouse, Donna should receive fifty percent of Harold's account balance. Because Harold had failed to designate a beneficiary under the Royal Gate plan, the plan

required the plan administrator to distribute the remaining fifty percent of Harold's interest to the surviving spouse, Donna. The magistrate judge held that the prenuptial agreement between Harold and Donna did not waive Donna's rights as surviving spouse under the plans. Further, the court refused to impose a constructive trust in favor of Patricia or the children, who argued that Donna had breached the prenuptial agreement by claiming a right in the proceeds. Thus, the magistrate judge held that Donna should receive all of the proceeds from the Royal Gate plan and one-half of the proceeds from the Royal Parkway plan.

The magistrate judge also concluded that Patricia, as named beneficiary, should receive the remaining fifty percent of Harold's interest in the Royal Parkway plan. The separation agreement lacked the specificity necessary to waive her rights as named beneficiary under the plan, and it failed to satisfy the requirements of a qualified domestic relations order under ERISA, which would preclude Donna from establishing an interest in the Royal Parkway plan. Finally, the magistrate judge rejected Patricia's contention that the plan was intended to take the place of the life insurance policy required by the separation agreement.

The court ordered the proceeds of the plans to be distributed to Donna and Patricia, and reasonable costs and fees to be paid to the Trusts. Donna appeals the magistrate judge's decision awarding part of the Royal Parkway fund to Patricia. Patricia, Brooke, and Christopher cross-appeal the decision awarding the balance of the proceeds to Donna.

**I.**

"[A] reviewing court should apply a de novo standard of review unless the plan gives the `administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Donaho v. FMC Corp., 74 F.3d 894, 898 (8th

Cir. 1996) (quoting <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989)).  Here, the Administrator did not exercise any such authority, but simply paid the funds into the court in this interpleader action.  Thus, we review the magistrate judge's interpretation of ERISA and the plan provisions de novo.  <u>See</u> <u>Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown</u>, 897 F.2d 275, 278 (7th Cir.) (en banc), <u>cert. denied</u>, 498 U.S. 820 (1990).

**A.**

Donna first argues that the magistrate judge erred in awarding Patricia fifty percent of the proceeds in the Royal Parkway Fund.  She contends that the magistrate judge failed to properly apply the provisions of the Royal Parkway plan, specifically, that the magistrate judge ignored the plan requirement that she consent to designation of Patricia as beneficiary.

ERISA defines the term qualified preretirement survivor annuity as "an annuity for the life of the surviving spouse the actuarial equivalent of which is not less than 50 percent of the portion of the account balance of the participant (as of the date of death) to which the participant had a nonforfeitable right . . . ."  29 U.S.C. § 1055(e)(2) (1994).

The Royal Parkway Plan creates a qualified preretirement survivor annuity in the event of the preretirement death of a plan participant.  Section 9.2.B of the plan provides:

> if a Participant dies before the Annuity Starting date, then at least 50% of the Participant's vested account balance on the date of death shall be applied toward the purchase of an annuity for the life of the Surviving Spouse.  The remainder of the Participant's vested account balance will be paid to the Participant's designated Beneficiary in accordance with Sec. 9.4; if the Participant's designated Beneficiary is the Surviving Spouse, the entire vested account balance shall be

-5-

applied toward the purchase of an annuity for the life of the Surviving Spouse.

Section 9.4 of the plan provides for the distribution of proceeds in the event of a participant's death. Section 9.4 states:

Subject to the provisions in Sec. 9.2, in the event of the death of a Participant, the Participant's Beneficiary(ies) designated by the Participant in accordance with Sec. 9.12, shall have a nonforfeitable right to at least 50% of the total value of the Participant's Employee Account as of the date of the Participant's death.

Section 9.2.B implements the requirements of ERISA, defining the surviving spouse's qualified preretirement survivor annuity as an amount at least fifty percent of the decedent's account balance. Section 9.4 specifies that a named beneficiary is also entitled to at least fifty percent of the account. Thus, under the terms of the plan, when there is a named beneficiary other than the spouse, the named beneficiary is entitled to fifty percent and a qualified preretirement survivor annuity is established on behalf of the surviving spouse for the other fifty percent.

Section 9.12 of the plan specifies the method for designating beneficiaries. The section states in part that "[e]ach Participant . . . may designate a Beneficiary . . . to receive retirement benefits surviving his death as provided under this Plan, provided, however, that if a Participant is married on the date of his death, such designation will be subject to the spousal consent requirements in Secs. 9.1 and 9.2."

Section 9.1.A(6) is the only portion of Section 9.1 and 9.2 that relates to spousal consent. Under that section, a waiver of the qualified preretirement survivor annuity is not effective unless the spouse "consents in writing," the "election designates

a specific beneficiary", the "consent acknowledges the effect of the election," and the "consent is witnessed by a plan representative or notary public." Donna argues that these requirements were not met and, thus, Patricia cannot be entitled to fifty percent of the plan proceeds.

The requirement in the plan for spousal consent relates only to waiver of the qualified preretirement survivor annuity, which by the terms of section 9.2.B constitutes fifty percent of the vested account and is paid to the surviving spouse. Designation of a beneficiary for the remaining fifty percent of the plan proceeds is not subject to the section 9.1.A(6) spousal consent requirement. Therefore, Donna's consent was not required for the designated beneficiary, Patricia, to receive the remaining fifty percent of the plan proceeds.

**B.**

Donna next argues that Patricia forfeited her rights as designated beneficiary when she executed a separation agreement which stated that she "relinquishe[d] any right, title or interest in and to any . . . pension plans . . . ." The same paragraph also provides that the agreement was executed "in full satisfaction of all property rights and all obligations for support otherwise arising out of the[ ] marital relationship."

In our circuit, "a property settlement entered into pursuant to a dissolution may divest former spouses of beneficiary rights in each other's [ERISA benefits], if the agreement makes it clear that the former spouses so intend." Mohamed v. Kerr, 53 F.3d 911, 914-15 (8th Cir.), cert. denied, 116 S. Ct. 185 (1995); Lyman Lumber

<u>Co. v. Hill</u>, 877 F.2d 692, 693 (8th Cir. 1989).[3]  The "spouse's rights as a beneficiary are extinguished only by terms specifically divesting the spouse's rights as a beneficiary under the policy or plan."  <u>Lyman Lumber Co.</u>, 877 F.2d at 693.  However, the word "beneficiary" is not required to be included in the terms of the separation agreement divesting a spouse's rights in the plan.  <u>Mohamed</u>, 53 F.3d at 915.  We must closely examine the facts and circumstances before us to determine if the separation agreement divested Patricia of her rights as a beneficiary under the Royal Parkway plan.  <u>Id.</u>

In <u>Lyman Lumber Co.</u>, 877 F.2d at 693-94, we held that a provision in the divorce decree stating that the husband should have his interest in a profit-sharing plan free of any interest of the wife was not specific enough to revoke his earlier designation of the wife as beneficiary.

Later, in <u>Mohamed</u>, 53 F.3d at 912-13, we concluded that a provision in a marriage termination agreement stating that each party would receive full interest in pensions, retirement plans, IRAs, mutual funds, and life insurance policies free of claims by the other party was sufficient to divest the former spouse of her rights as named beneficiary.  In that case, the husband named the wife as beneficiary of an employer's group life insurance policy.  Later, the husband became ill, and the wife instituted an action to have a conservator appointed and to dissolve the marriage. When

---

[3]In contrast, the Sixth Circuit in <u>McMillan v. Parrot</u>, 913 F.2d 310, 311-12 (6th Cir. 1990), held that the statutory language of ERISA requires "ERISA plans [ ] to be administered according to their controlling documents."  The court determined that ERISA requires a plan administrator to act in "accordance with the documents and instruments governing the plan."  <u>Id.</u> at 311 (quoting 29 U.S.C. § 1104(a)(1)(D) (1985)).  In the Sixth Circuit's view, this bright line rule simplifies administration, reduces litigation, avoids double liability, and assures beneficiaries of their right to receive benefits.  <u>Id.</u> at 312.

-8-

the husband later died, the ex-wife, as named beneficiary, claimed the proceeds of the life insurance policy.  Id.

The facts surrounding the marriage and divorce strongly supported our conclusion.  We noted that the wife "could not get away fast enough," once the husband was diagnosed with his illness.  Id. at 916.  "[S]he abandoned him to his illness."  Id.  Further, the marriage lasted only three years, there were no children, and the divorce severed all ties between the couple.  Id.

We distinguished the result reached in Lyman from the result reached in Fox Valley and Vicinity Construction Workers Pension Fund, 897 F.2d at 278-82, and Brandon v. Travelers Ins. Co., 18 F.3d 1321 (5th Cir. 1994), cert. denied, 115 S. Ct. 732 (1995), because the language in these latter cases relinquished both present and future claims.[4]  Mohamed, 53 F.3d at 915.  We held "that the language `full right, title, interest and equity'" in the agreement "comprehends any beneficial interests or rights, notwithstanding that they are not expressly mentioned."  Id.

The agreement here contains much of the same language as the agreement in Mohamed.  Instead of stating that "each of the parties shall be awarded full right, title, interest and equity," Mohamed, 53 F.3d at 912, it states that each party "relinquishes any right, title or interest."  Although these words could include Patricia's

---

[4]Donna argues that the Seventh Circuit's decision in Fox Valley & Vicinity Construction Workers Pension Fund, 897 F.2d at 278-82, disposes of this issue.  In that case the property settlement provided that the parties waived "any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party."  Id. at 277.  The court distinguished the case from Lyman because the language included a specific, not a general, waiver of pension rights.  Id. at 280.  Our decision here is not inconsistent with that of the Seventh Circuit, when one considers the additional language contained in the separation agreement here.  See Mohamed, 53 F.3d at 915 (discussing the Fox Valley & Vicinity Constr. Workers Pension Fund decision).

interest in the Royal Parkway plan, additional language in the agreement undermines this conclusion. The same paragraph of the separation agreement states that the parties accept the provisions of the agreement in satisfaction of property rights and support obligations "otherwise <u>arising out of the marital relationship</u>" (emphasis added).

When read in light of the magistrate judge's factual findings, we believe this language demonstrates that the separation agreement was not intended to, and it does not, modify Patricia's interest as the designated beneficiary of the Royal Parkway plan. <u>See</u> <u>Lyman Lumber Co.</u>, 877 F.2d at 693-94. Harold and Patricia executed the separation agreement to deal with their past marital obligations and property. Significantly, there is no mention of the plan benefits in the separation agreement. The magistrate judge found that after the divorce, Harold maintained Patricia as the plan beneficiary. Further, Harold and Patricia "maintained an amicable relationship" and Harold provided more support to Patricia and the children than he was legally obligated to provide.

This is a vastly different situation than we faced in <u>Mohamed</u>, and the record demonstrates that Harold intended for Patricia to be the beneficiary of the Royal Parkway plan. The separation agreement did not waive her rights as the designated plan beneficiary. Thus, we hold that Patricia is entitled to receive fifty percent of the Royal Parkway plan.

**II.**

On cross-appeal, Patricia and the children first argue that Harold's children, not Donna, were entitled to fifty percent of the proceeds from the Royal Gate plan, after Harold died without designating a plan beneficiary. They argue that section 9.12 gives the plan administrator discretion in awarding proceeds from the plan when the participant has not designated a beneficiary.

-10-

Section 9.12 of the plan provides:

> If any Participant shall fail to designate a Beneficiary for the purposes of this Section, . . . the Plan Administrator shall designate Beneficiaries on his behalf, but only from among persons with the following relationship to the Participant, and only in the order named: (1) spouse, (2) children, (3) other descendants, (4) parents, (5) other ancestors, (6) brothers and sisters, (7) nephews and nieces, and (8) estate.

This section specifically requires the plan administrator to designate the beneficiary when one has not been named, and it conclusively specifies the order of selection. Pursuant to the terms of section 9.12, the surviving spouse, Donna, must be designated as the beneficiary.

Patricia and the children next argue that Donna should not be entitled to the proceeds from either plan because she waived these rights in her prenuptial agreement with Harold. They argue that they are entitled to equitable relief and that a constructive trust should be established in their behalf. They contend that once the plan proceeds have been distributed, imposing such an equitable arrangement does not circumvent the requirements of ERISA.

Section 9.2.B of both the Royal Parkway and the Royal Gate plans provides that Donna, as surviving spouse, is to receive a qualified preretirement survivor annuity amounting to fifty percent of the participant's account balance. In addition, under section 9.12 Donna is entitled to receive the remaining fifty percent of Harold's account in the Royal Gate plan. The prenuptial agreement does not alter this result.

The prenuptial agreement stated that both parties wished to accept the provisions of the agreement "in lieu of all rights which either of them would otherwise acquire, by reason of the contemplated marriage, in the property or estate of the other."

The agreement also stated that "[n]either party shall have or establish or make claim to any title, interest, rights or claims, in the Separate Property of the other, other than as donee or beneficiary under a written document."

Section 9.1.A(6) of the plan implements and is consistent with ERISA's statutory requirements for waiving a spouse's rights to benefits under the plan. See 29 U.S.C. § 1055(c). As discussed, waiver of a qualified preretirement survivor annuity requires the participant's spouse to consent in writing to the election, the election to designate a specific beneficiary, the spouse's consent to acknowledge the effect of the election, and the consent to be witnessed by a plan representative or notary public.

The prenuptial agreement fails to satisfy any of these requirements. It was signed before the marriage, not by Donna after she became Harold's spouse and became entitled to receive surviving spouse benefits. See Zinn v. Donaldson Co., 799 F. Supp. 69, 73 (D. Minn. 1992). The agreement neither designated a specific beneficiary nor acknowledged the effect of a waiver. In fact, it failed entirely to mention the pension plans. Finally, while space was provided for a notary to acknowledge the agreement, this was not done. Thus, the prenuptial agreement failed to satisfy the waiver requirements of ERISA or the plans.

However, Patricia and the children argue that even if these requirements were not met, ERISA does not preempt their equitable claims to the proceeds of the plans. The Second Circuit rejected a similar argument in Hurwitz v. Sher, 982 F.2d 778, 781 (2d Cir. 1992), cert. denied, 508 U.S. 912 (1993). The court held that a prenuptial agreement lacking the specific ERISA waiver requirements was not an effective waiver under ERISA, id. at 782, and any attempt to force compliance with the terms of the prenuptial agreement in equity was "merely an attempt to evade the clear

statutory requirements."  <u>Id.</u> at 783 (citing <u>Zinn</u>, 799 F. Supp. at 74).

In support of their equitable contentions, Patricia and the children cite <u>Callahan v. Hutsell, Callahan & Buchino P.S.C. Revised Profit Sharing Plan</u>, Nos. 92-5796, 92-5797, and 92-5862, 1993 WL 533557 (6th Cir. 1993) (unpublished), which vacated and remanded a district court case relied on by Donna.  While we may consider unpublished opinions when no published opinion would serve as well, we believe that this case adds little support to Patricia and the children's argument and that <u>Callahan's</u> limited holding does not apply here.  Further discussion of the case is not necessary.  We conclude that imposing a constructive trust in this case would be inconsistent with the requirements of ERISA and the terms of the plans.  Therefore, Donna was entitled to receive the fifty percent qualified preretirement survivor annuity from both the Royal Parkway and Royal Gate plans.[5]

We affirm the decision of the magistrate judge.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]We also note that under section 9.12 of the Royal Gate plan, Donna became the designated beneficiary of fifty percent of the plan when Harold failed to designate a beneficiary.  The prenuptial agreement allows the parties to receive property as a beneficiary of a written document.

-13-