United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-4166

John Hill,                       *

                           *

       Appellant,             *   Appeal from the United States

                           *   District Court for the

     v.                   *   Western District of Missouri.

                           *

AT&T Corporation,      *

                           *

       Appellee.              *

_____

Submitted: June 10, 1997
Filed: September 18, 1997
_____

Before BOWMAN, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

BOWMAN, Circuit Judge.

John Hill appeals from the decision of the District Court granting summary judgment to AT&T Corporation on Hill's claim under the Employee Retirement Income Security Act (ERISA) for benefits allegedly due him as beneficiary of his former wife's employee savings plan. We reverse.

Judy and John Hill were married in 1970 in Missouri. At the time, Judy had been an AT&T employee for a short time. The couple moved to Washington state in 1978, where Judy continued her employment with AT&T. On July 31, 1979, Judy

executed a beneficiary designation form for her employee savings plan (at that time called the Bell System Savings and Security Plan), naming John as primary beneficiary and Sharron Long, Judy's sister, as contingent beneficiary.

In July 1986 the couple separated and John returned to Missouri. Judy filed for divorce and a Washington state court granted a decree of dissolution in November 1986. John acknowledged in his deposition taken in this case that he was dealing with a drug problem when the couple separated, which in turn was causing financial difficulties for the couple. John was unrepresented by counsel during the dissolution proceedings and did not appear or contest the divorce. In other words, the dissolution was granted as to him by default. After the divorce, Judy was diagnosed with breast cancer, and she died on June 17, 1991, in Rhode Island, where she had moved. She still was employed by AT&T at the time of her death.

After Judy's death, both John Hill and Sharron Long claimed they were entitled to all the funds in Judy's employee savings plan. Hill based his claim on the beneficiary designation form completed by Judy in 1979. Long's competing claim apparently was based on the Hills' divorce decree and the fact that Hill was not Judy's spouse at the time of her death. Notwithstanding the obvious conflict between two parties claiming the right to collect the same funds, AT&T did not file for judgment in interpleader as it indicated it would in correspondence to Hill dated October 1991. Instead, in May 1992, AT&T advised Long that it would be paying the funds to her, citing the Hills' divorce decree. By the time Hill was notified of the decision in September 1992,[1]

---

[1]On June 11, 1992, AT&T sent a registered letter to Hill informing him of its decision to pay the funds to Long, but because Hill accepts registered mail from no one, the letter was returned to the company. When Hill wrote AT&T on August 26, 1992, to check on the status of his request for payment, and at that time advised the company that he did not accept registered mail, a copy of the June letter was sent to him via ordinary mail.

AT&T had disbursed the funds, approximately $19,000.[2]

In June 1995, Hill brought an action in three counts against AT&T in circuit court in Jackson County, Missouri. AT&T removed the case to federal court, and the District Court dismissed Counts II and III, Hill's pendent state law claims, holding that they were preempted by ERISA. Hill does not appeal from that ruling. On cross-motions for summary judgment, the District Court granted AT&T's motion, holding that, under the law of this Circuit, the divorce decree operated as Hill's waiver of his beneficiary rights to the money in Judy's employee savings plan. Hill appeals, claiming that the divorce decree lacks the specificity necessary to divest him of his beneficiary rights.[3] Upon de novo review, we agree with Hill's position.

The issue of whether and how a divorce decree may divest a person of beneficiary rights is not explicitly considered in ERISA and thus is a question of federal common law.[4] See Mohamed v. Kerr, 53 F.3d 911, 913 (8th Cir.), cert. denied, 116

---

[2] It is unclear whether the check actually was made out to Judy Hill's estate or to Sharron Long. The parties do not agree; AT&T claims it paid the estate and Hill claims AT&T paid Long, who was designated as the contingent beneficiary. Although the canceled check is not in the record, it appears that the check was mailed to Long, who was the executrix and sole legatee of Judy's estate. Whether or not Long as an individual was the payee is another matter. Resolution of the question is not necessary to our decision, however, as AT&T will be responsible for paying Hill, regardless of whom they paid in 1992.

[3] Hill also claims the District Court erred when it disregarded as hearsay certain statements Judy made in post-divorce conversations between Judy and John Hill wherein she allegedly told him it was her intent that he receive the money in her employee savings plan upon her death. It strikes us that the District Court likely was correct, but because of our holding on the merits we need not and do not reach the issue.

[4] Hill would have us adopt as controlling authority Washington state law, which recognizes divestiture of beneficiary interests upon divorce only if the dissolution decree specifically so states and "the policy owner formally executes this previously stated intention to change the beneficiary within a reasonable time (but no longer than 1 year) after dissolution." Aetna Life Ins. Co. v. Wadsworth, 689 P.2d 46, 47 (Wash. 1984) (en banc). It is true that we "may look to state law for guidance in developing federal common law" unless it "conflicts with ERISA or its underlying policies." Mohamed v. Kerr, 53 F.3d 911, 913 (8th Cir.), cert. denied, 116 S. Ct. 185 (1995). But it is unnecessary for us to decide whether the holding of the Washington Supreme Court should be incorporated into the federal common law of this Circuit, as we reach the same conclusion that Washington state law would compel without adopting the per se rule of Wadsworth.

S. Ct. 185 (1995). In the Eighth Circuit, as regards ERISA-governed pension plans, life insurance, and profit sharing plans, it is the law that a former spouse may be divested of a beneficiary interest, notwithstanding a written beneficiary designation naming the former spouse, if the former spouse was designated before the dissolution of marriage and a property settlement agreed to pursuant to the dissolution operates as a waiver of beneficiary rights. See National Auto. Dealers & Assocs. Retirement Trust v. Arbeitman, 89 F.3d 496, 500 (8th Cir. 1996); Mohamed, 53 F.3d at 914; Lyman Lumber Co. v. Hill, 877 F.2d 692, 693 (8th Cir. 1989). The language of any such provision in a dissolution decree, while not required to include the term "beneficiary," nevertheless must be sufficiently specific to convey the intent of the parties to divest one or the other, or both, of a beneficiary interest. See Mohamed, 53 F.3d at 915. Our review of the cases and of all the relevant "facts and circumstances before us," Arbeitman, 89 F.3d at 500, convinces us that the Hills' dissolution decree did not divest Hill of his beneficiary interest in Judy's employee savings plan. We first review the case law.

In Lyman Lumber, the divorce decree stated that the husband "shall have as his own, free of any interest of [the wife], his interest in the profit-sharing plan of his employer." Lyman Lumber, 877 F.2d at 693 (quoting divorce decree) (alteration added). Few other details of the circumstances surrounding the marriage and divorce

were noted in the opinion, but the Court held that this language did not divest the former spouse, that is, the named beneficiary, of her beneficiary interest in the plan.

Compare the language of the termination agreement in <u>Mohamed</u>:

That each of the parties shall be awarded full right, title, interest and equity in and to the bank accounts, stocks, bonds, savings accounts, pensions, retirement plans, combined IRAs, mutual funds, life insurance policies with any cash value thereon, limited and general partnership interests, and any other assets which are held in their name or for their benefit as of the date of this Marriage Termination Agreement, free and clear of any claim by the other party.

<u>Mohamed</u>, 53 F.3d at 912-13 (quoting Marriage Termination Agreement). We quote the provision in full to demonstrate that this language is significantly more inclusive than that in <u>Lyman Lumber</u>. The spouses in <u>Mohamed</u> were mutually awarded "full right, title, interest and equity in and to" their own assets as enumerated, "free and clear of <u>any</u> claim by the other party" (emphasis added). The Court concluded that the termination agreement divested the parties of "any beneficiary interests or rights, notwithstanding that they are not expressly mentioned." <u>Id.</u> at 915. Moreover, the facts and circumstances in <u>Mohamed</u> were "especially compelling for our conclusion that the agreement evidenced a mutual intent to divest." <u>Id.</u> at 916. The wife, who claimed the right to the proceeds of the life insurance policy at issue, divorced her husband after just a little more than three years of marriage, a few months after he was diagnosed with Alzheimer's disease. The couple had no children and the wife was not responsible for the costs of her husband's last illness or for his funeral expenses. In fact, she remarried soon after the divorce and apparently never saw her former husband or spoke to him after she divorced him. As the Court noted, "[S]he abandoned him to his illness." <u>Id.</u>

In a 1996 case from this Court, the parties "agreed to relinquish 'any right, title or interest in and to any earnings, accumulations, pension plans, profit sharing plans, future investments, money or property of the other.'" Arbeitman, 89 F.3d at 498 (quoting separation agreement). The former wife, who had custody of the couple's two children, was the designated beneficiary of one of her former husband's pension plans. (She actually received only half the value of the pension under the terms of the plan; the current wife received the rest.). The divorced couple had maintained a friendly relationship, notwithstanding the former husband's remarriage, and he provided support to the family beyond his legal obligations. The Court held that "[t]he separation agreement did not waive [the former wife's] rights as the designated plan beneficiary" and concluded from its review of the record that the deceased intended his former wife to be the beneficiary of the retirement plan. Id. at 501.

We consider now the relevant facts and circumstances of this case. We begin with the language of the Hills' dissolution decree, which is not at all expansive. According to the order of the Washington state court entering the decree of dissolution, Judy was to receive "[a]ny retirement, social security, or pension benefits earned by [her] through her employment" and "[a]ny checking, savings or other accounts in her name." (Hill received the same, as to benefits earned through his employment and accounts in his name.) If Judy's employee savings plan comes within one of these categories, there nevertheless is no indication in this perfunctory language dividing community property that her beneficiary designation to Hill was waived by operation of the decree. Under the terms of the decree, Judy did retain the plan and upon the occurrence of certain events (e.g., the end of her employment with AT&T) she would have received the funds; Hill would have had no claim to them. But her interest in the savings plan also left her free to maintain Hill as the designated beneficiary, or to name anyone else. There was no inclusive release of future "claims" to the plan, as we saw in Mohamed.

In addition, the circumstances of the case support our reading of the dissolution decree. Just prior to the issuance of the Hills' final decree of dissolution, Judy designated her sister as primary beneficiary of the life insurance policy that she had acquired as a benefit of her employment with AT&T.[5] Notwithstanding this deliberate act, Judy did not change the beneficiary on the savings plan.[6] Further, the savings plan was valued at approximately $19,000. Sharron Long received the proceeds of Judy's $100,000 life insurance policy and was the sole legatee named in Judy's will. In other words, Long received the bulk of Judy's assets upon her death. Thus she was in a position to pay the expenses of Judy's last illness and her funeral (although there is no

---

[5]Hill's brief states that Judy actually changed the beneficiary designation on her life insurance from Hill to Long. Although this seems likely, the original form naming Hill is not in the record. Hill's counsel also told the Court at oral argument that Judy changed the beneficiary of an AT&T stock ownership plan from Hill to Long, but this is not in the record either.

[6]At oral argument, counsel for AT&T represented to the Court that, under ERISA, Judy could not legally have removed Hill as beneficiary of the plan at the time she changed the insurance beneficiary, and that this explains why she did not do so. He stated that she needed Hill's permission to remove him as beneficiary for so long as the couple was still legally married. It is true that ERISA requires spousal consent before a participant may "waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit" available under certain employee benefit plans. 29 U.S.C. § 1055(c)(1)(A)(i) (1994); see id. § 1055(c)(2) (1994). The official plan documents are not part of the record, and we are not prepared to conclude, based on the information we do have, that the employee savings plan at issue here is a plan to which § 1055 applies. But even if it is, Judy could have changed the beneficiary on the plan ten days later, when the divorce was final, or any time after that. There is no indication in the record that Judy was not competent after the divorce. She executed her last will and testament on July 20, 1987, eight months after the divorce, and could have changed the savings plan beneficiary at that time. As her illness progressed, she certainly had both the opportunity and the incentive to get her affairs in order so that her wishes regarding the disposition of her assets would be honored upon her death. Therefore we reject AT&T's explanation for Judy's failure to change the beneficiary on the employee savings plan.

indication in the record that she did so). While it is true that Judy had no post-divorce obligations to Hill that might explain why she would choose to allocate these funds to him, we think, "based on the record before us in this fact-driven determination," Mohamed, 53 F.3d at 915, it is most likely that Judy did not intend that Hill be divested of that interest by operation of the dissolution decree.

In sum, we hold that Hill was entitled to summary judgment on his claim that AT&T should have paid the money in Judy Hill's employee savings plan to him upon Judy's death, and that the District Court erred in granting summary judgment to AT&T. Under the law of this Circuit, the Hills' dissolution decree was not sufficiently specific to divest Hill of his beneficiary interest in Judy's employee savings plan. Those funds should have gone to John Hill, the person Judy had designated as the primary beneficiary of the savings plan.

In an argument not raised in the District Court, AT&T contends that we owe deference to the decision of the plan administrator and should reverse only for an abuse of discretion. See Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). Under that standard of review, the plan administrator's discretionary decisions as regards the savings plan are reversible if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. at 900 (quoted cases omitted). As discussed above, the decision to give Long the funds in Judy Hill's employee savings plan despite a properly executed beneficiary designation naming someone else, if that is indeed a discretionary decision, is nevertheless a misapplication of federal common law in this Circuit and thus erroneous as a matter of law.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with our opinion.

A true copy.

Attest:

             CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT