PETER MCKENNA *v.* ROBERTA DELENTE
(AC 28681)
(AC 29433)

Harper, Alvord and Borden, Js.

148

Argued January 14—officially released August 10, 2010

*Laurel Fedor*, for the appellant (defendant).

*Norman A. Roberts II*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. In this consolidated appeal, the defendant, Roberta Delente,[1] appeals from the judgments of the trial court dissolving her marriage to the plaintiff,

---

[1] Prior to the rendering of judgment dissolving her marriage in this action, Delente changed her name to Katherine Copperfield. For purposes of these appeals, we refer to her by her former name.

Peter McKenna, and denying her motion for contempt. On appeal, the defendant claims that the court: (1) improperly concluded that the parties' premarital agreement was enforceable; (2) lacked subject matter jurisdiction to order the terms and interest regarding her repayment of loans and promissory notes to the plaintiff; (3) improperly determined the "Operative Event" date as defined in the parties' premarital agreement; (4) abused its discretion by (a) not awarding her a portion of the plaintiff's pension plan, (b) failing to reimburse her for contributions she made to the marital property and (c) not awarding her attorney's fees; and (5) improperly found that the plaintiff was not in contempt for violating Practice Book § 25-5 (a) (1). We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's consolidated appeal. The parties were married on August 31, 1999, in New York. The plaintiff is a retired former partner with the law firm of Wachtell, Lipton, Rosen and Katz. For several years prior to and throughout the early stages of their marriage, the defendant, who was born in Brazil, was employed as a professional model. At the time of trial, the plaintiff was seventy years old and in poor health, and the defendant was forty-two.

On August 26, 1999, five days prior to their marriage, the plaintiff and the defendant entered into a premarital agreement. Each was represented by independent counsel at the time the agreement was executed. Under the terms of the agreement, the parties, inter alia, retained control of and the absolute right to their separate property. The only marital property contemplated by the agreement was the parties' real property located at 1 Stallion Trail in Greenwich (Greenwich property). Title to this property was held by the parties as joint tenants with rights of survivorship. The agreement also contained a choice of law provision specifying that it was

to be construed and enforced in accordance with the laws of New York.

The agreement further provided that upon the occurrence of an "Operative Event," the plaintiff was to pay the defendant a "Distributive Award," the amount of which was to be determined by the length of time between the parties' wedding date and the "Operative Event" date. Specifically, the "Distributive Award" provided for a payment of $50,000 to the defendant if the date of the "Operative Event" was before the parties' first anniversary, and a payment of $100,000 if the "Operative Event" occurred on or after their first anniversary but before their second.[2] An "Operative Event" was defined in the agreement as the earliest of the following to occur: "commencement of an action for a judgment of divorce, separation . . . or annulment of a voidable marriage; or . . . [w]ritten notice by one party to the other party . . . of an intention to seek a judgment of separation, divorce . . . or annulment of a void marriage."

On September 28, 1999, less than one month after the parties' marriage, the plaintiff issued to the defendant a notice of an "Operative Event," as defined by the agreement. The parties later reconciled, and on January 7, 2000, entered into a modification agreement. The modification agreement declared the first notice null and void and ratified all other terms of the premarital agreement "as if no Operative Event [n]otice . . . had ever been sent."

The parties' attempt at reconciliation ultimately failed, and on August 28, 2000, three days before their first anniversary, the plaintiff sent the defendant a second notice of an "Operative Event," which indicated that he intended to seek a judgment dissolving their

---

[2] The "Distributive Award" payment schedule increased gradually until the date of the parties' seventh anniversary, when it capped at $800,000.

marriage. The defendant acknowledged receipt of the second notice by a return letter dated September 13, 2000.

On September 2, 2005, the plaintiff filed an amended complaint seeking a dissolution of his marriage to the defendant, claiming that the marriage had broken down irretrievably. In the second count of his amended complaint, the plaintiff alleged the existence of the premarital agreement and sought in the prayer for relief to enforce its terms.[3] The defendant's amended answer,[4] filed September 20, 2006, pleaded by way of a general denial to the existence of the agreement.[5] No special defenses were filed at that time.

The trial commenced on September 19, 2006. On September 21, the plaintiff's witness, Eleanor Alter, testified as an expert in New York domestic relations law. Specifically, Alter testified on direct examination that in the absence of any affirmative defenses, the agreement was enforceable under New York law. The bulk of Alter's testimony, particularly as elicited by the defendant on cross-examination, concerned the adequacy of the second notice of "Operative Event," rather than the enforceability of the agreement.

Following redirect examination by the plaintiff, the court itself addressed its own questions with Alter concerning the agreement. The court raised, inter alia, New York Domestic Relations Law § 236, pt. B 3 (McKinney 1999),[6] the New York statute controlling premarital

[3] The plaintiff's original complaint, dated April 21, 2004, did not allege the existence of or seek the enforcement of the parties' premarital agreement.

[4] The defendant responded to the plaintiff's original complaint by way of an answer and cross complaint filed May 7, 2004. That pleading also lacked any reference to the premarital agreement.

[5] The operative answer was filed on the second day of trial, immediately preceding the commencement of testimony.

[6] New York Domestic Relations Law § 236, pt. B 3 (McKinney 1999), provides in relevant part that a premarital agreement may include a "provision for the amount and duration of maintenance or other terms and conditions of the marriage relationship . . . provided that such terms were fair and

agreements. The court inquired of Alter whether, pursuant to the New York statute, it was required to make a determination that the agreement was fair and reasonable. Alter responded that under New York law, the issue concerning whether the terms were fair and not unconscionable applied only to certain provisions of the agreement, not to the agreement as a whole. At no point did the court ask specifically of Alter whether, in her opinion, the terms of the parties' agreement were fair and not unconscionable.

On October 23, 2006, nearly five weeks after Alter testified, the defendant, via new counsel,[7] filed a new pleading entitled "Defendant's Amended Cross-Complaint with Special Defenses." The new pleading included two special defenses that challenged the enforceability of the premarital agreement. The first claimed that the agreement was obtained through misrepresentation and nondisclosure of material facts, and the second claimed that the agreement was unconscionable. The plaintiff objected to the defendant's attempt essentially to amend her answer at that point in the dissolution proceedings to include the new special defenses, and the court sustained the objection. The following day, the defendant filed a formal motion for permission to amend her cross complaint and allege the special defenses, which the court denied. The court determined that granting the motion, inter alia, would have unduly delayed the dissolution action.

Nearly two months later, during her cross-examination of the plaintiff, the defendant attempted to offer a certain 1999 tax related document into evidence. The defendant claimed that the document was necessary

reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment . . . ."

[7] On September 22, 2006, the day after Alter testified, the defendant's counsel was granted permission to withdraw from the case. This was one of multiple changes in the defendant's counsel during the proceedings.

to demonstrate that the plaintiff had not made a fair disclosure of his finances when the parties entered into the premarital agreement and that the agreement, therefore, was unconscionable under General Statutes § 46b-36g.[8] The plaintiff objected on the ground that the document was beyond the scope of the pleadings. He argued that because the defendant's motion to allege special defenses was denied and her general denial in the operative answer challenged only the existence of the agreement, evidence pertaining to the validity and alleged unconscionability of the agreement was inadmissible. In response, the defendant argued that even if the document originally was inadmissible, the plaintiff nevertheless had waived his right to object to this evidence by first offering the testimony of his expert.

Following extensive argument, the court sustained the plaintiff's objection and ruled that any evidence that purported to challenge the validity of the agreement was inadmissible. The court, relying on Practice Book § 10-50, concluded that the defendant's failure to plead specially the defense of unconscionability required the exclusion of this evidence. Furthermore, the court concluded that the plaintiff had not waived his right to object to the admission of such evidence.

By memorandum of decision filed December 20, 2007, the court dissolved the parties' marriage. The court found that the defendant's general denial as to the existence of the premarital agreement was insufficient to attack the validity of the agreement and concluded, therefore, that the agreement was enforceable. The

---

[8] General Statutes § 46b-36g (a) provides in relevant part: "A premarital agreement or amendment shall not be enforceable if the party against whom enforcement is sought proves that . . . [t]he agreement was unconscionable when it was executed or when enforcement is sought; or . . . [b]efore execution of the agreement, such party was not provided a fair and reasonable disclosure of the amount, character and value of property, financial obligations and income of the other party . . . ."

court thereafter entered financial orders in accordance with the terms and conditions of the agreement. The court found that the "Operative Event" occurred on August 28, 2000, three days before the parties' first anniversary, and determined that the defendant was therefore entitled to a $50,000 "Distributive Award," which the plaintiff has already paid to the defendant. No alimony was ordered, the parties retained their respective rights to all separate assets as expressed in the premarital agreement, and the defendant was not awarded any rights as to the plaintiff's pension plan. The plaintiff also was awarded title to the Greenwich property, which was ordered to be sold immediately. All carrying costs[9] associated with the property were ordered to be paid by the plaintiff, and, after that property was sold, he was to be reimbursed for one half of all carrying costs he had advanced from the "Operative Event" date through the closing date. The balance of the remaining proceeds was to be divided equally between the parties.

The court's dissolution judgment also addressed the repayment of certain promissory notes and loans the plaintiff made to the defendant during their marriage. The court found that after the "Operative Event" date but before the commencement of the dissolution action, the defendant had signed six promissory notes payable to the plaintiff. Two of the notes were found to contain an interest rate of 4 percent, and each of the six notes was found to be due either on demand, on a specific date or upon the sale of the Greenwich property. The court found that the defendant wrongfully had withheld the amount due on each note, except for those due upon the sale of the Greenwich property, and ordered that all wrongfully withheld moneys, including any accrued interest, were due immediately. Additionally,

---

[9] Carrying costs were defined as mortgage principal and interest payments, real estate taxes due to the town of Greenwich and necessary major repairs.

for those notes that did not contain a rate of interest, the court set a discretionary rate of 8 percent.[10] The court also addressed a separate $14,000 loan the plaintiff made to the defendant, which also was found to have been wrongfully withheld. The court applied the discretionary 8 percent interest rate to this loan as well.[11]

On October 25, 2006, while the dissolution action was pending, the defendant filed a motion for contempt in which she claimed that the plaintiff had violated the automatic order provisions of Practice Book § 25-5 (a) (1). In that motion, the defendant addressed the fact that on October 12, 2006, the plaintiff transferred the Greenwich property to himself by way of a quitclaim deed. The defendant claimed that because this transfer had the effect of terminating her survivorship rights in the property and was effectuated without her consent, the plaintiff had violated the automatic orders. On March 22, 2007, the court denied the defendant's motion. The defendant thereafter appealed from that ruling in docket number AC 28681 and appealed from the court's dissolution judgment in docket number AC 29433.[12] Additional facts will be set forth as necessary.

I

DISSOLUTION JUDGMENT

On appeal, the defendant raises several legal and factual challenges to the court's dissolution judgment. She claims that the court: (1) improperly concluded

---

[10] In sum, moneys due on four of the six promissory notes were found to have been wrongfully withheld, and the court applied the discretionary 8 percent interest rate to three of these notes. All interest was calculated from the date that each note was found to be due through November 30, 2007.

[11] Although the court found that there was no writing in connection with this loan, and no expressed interest rate, our review of the entire record suggests otherwise. The court's specific findings in connection with this loan, however, are not challenged on appeal.

[12] These appeals were consolidated pursuant to Practice Book § 61-7.

that the parties' premarital agreement was enforceable; (2) lacked subject matter jurisdiction to order the terms and interest rate on the moneys found to have been wrongfully withheld from the plaintiff; (3) improperly determined that the "Operative Event" date was before the parties' first anniversary; and (4) abused its discretion by not awarding her a portion of the plaintiff's pension plan, credits for her expenditures on the Greenwich property and attorney's fees.

## A

The defendant first claims that the court improperly concluded that the parties' premarital agreement was enforceable when there was "ample evidence" to support a finding of unconscionability. We disagree.

As set forth previously, the court ruled that any evidence offered by the defendant that purported to demonstrate the unconscionability of the parties' premarital agreement was inadmissible on the basis of her failure to allege this defense specially. The defendant contends, however, that the court's ruling was improper because the defense of unconscionability does not require the formality of a special pleading. The defendant's argument is without merit.

"A trial court's decision to decline to review a claim that has not been pleaded specially as required by the rules of practice is reviewable under a deferential standard. . . . [W]hen a party properly objects to a violation of the rules of practice, the trial court may disregard the improperly raised claim if doing so is not an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 240, 866 A.2d 629 (2005).

"Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief,

even in these iconoclastic days, that no orderly administration of justice is possible without them." (Internal quotation marks omitted.) *Heim* v. *California Federal Bank*, 78 Conn. App. 351, 363, 828 A.2d 129, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). Practice Book § 10-50 provides in relevant part that "[n]o facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus . . . coverture, duress, fraud [and] illegality not apparent on the face of the pleadings . . . must be specially pleaded . . . ."[13] The defense of unconscionability does not deny the existence of a contractual agreement. A party asserting such a defense, instead, claims that despite the formation of an otherwise valid agreement, the contract must not be enforced on the basis of equitable considerations. Accordingly, "[t]he doctrine of unconscionability generally serves as a special defense in contract actions." *Payne* v. *TK Auto Wholesalers*, 98 Conn. App. 533, 536 n.4, 911 A.2d 747 (2006).

We are unable to find, nor does the defendant cite, any authority to support her claim that the defense of unconscionability may be maintained by way of a general denial. Instead, the defendant cites *McCarthy* v. *Santangelo*, 137 Conn. 410, 414, 78 A.2d 240 (1951), for the proposition that the defense of contract *illegality* need not be pleaded specially. In *McCarthy*, our Supreme Court concluded that, in certain circumstances, a defendant's failure to plead illegality specially

---

[13] Although the defense of unconscionability is not specifically listed as requiring special pleading, we note that "the list of special defenses in § 10-50 is illustrative rather than exhaustive." *Kosinski* v. *Carr*, 112 Conn. App. 203, 209 n.6, 962 A.2d 836 (2009). Practice Book § 10-50, therefore, "lists *some* of the defenses which must be specially pleaded and proved." (Emphasis in original; internal quotation marks omitted.) Id.

would not preclude that defense from being raised.[14] The defendant's argument, however, implies that the defenses of contract illegality and unconscionability are synonymous. This is not so.

" 'Unconscionable' is a word that defies lawyer-like definition." 7 A. Corbin, Contracts (Rev. Ed. 2002) § 29.4, p. 387. "The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other. . . . The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing . . . of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." (Citation omitted; internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 731–32, 975 A.2d 636 (2009). "The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise." (Internal quotation marks omitted.) *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 763, 677 A.2d 479 (1996).

The defense of contract illegality, by contrast, is premised on "the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to

---

[14] In *McCarthy*, the plaintiff was an attorney representing a spouse in divorce proceedings. *McCarthy* v. *Santangelo*, supra, 137 Conn. 411. The attorney and the spouse entered into a contract in which it was agreed that the attorney's compensation would be one third of any alimony that the court might award to the spouse. Id. Not surprisingly, our Supreme Court concluded that this arrangement was illegal. Id., 412. The court reasoned: "The vice of an agreement like that into which the [attorney] entered lies in the strong inducement which it offers to an attorney to ignore the possibility of reconciliation and to press, for personal gain, the dissolution of a marriage which patience and effort might salvage." Id.

prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract . . . . *McMullen* v. *Hoffman*, 174 U.S. 639, 654, [19 S. Ct. 839, 43 L. Ed. 1117 (1899)]; *Vaszauskas* v. *Vaszauskas*, 115 Conn. 418, 423, 161 A. 856 (1932)." (Internal quotation marks omitted.) *Solomon* v. *Gilmore*, 248 Conn. 769, 785, 731 A.2d 280 (1999). Consequently, in rare circumstances such as those presented in *McCarthy*; see footnote 14 of this opinion; it is understandable that a court would invalidate an illegal contract, irrespective of a pleading deficiency, so as not to advance "the illegality that taints the contract." (Internal quotation marks omitted.) *Parente* v. *Pirozzoli*, supra, 87 Conn. App. 250.

The defendant, however, has failed to demonstrate why the circumstances of this case require us to carve out an exception to the pleading requirements of Practice Book § 10-50. We instead choose to follow the extensive body of case law that highlights the importance of pleading properly. See, e.g., *Somers* v. *Chan*, 110 Conn. App. 511, 528, 955 A.2d 667 (2008) ("[p]leadings have an essential purpose in the judicial process" [internal quotation marks omitted]); *Parente* v. *Pirozzoli*, supra, 87 Conn. App. 241 ("[t]he purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway" [internal quotation marks omitted]); see also *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, 91 Conn. App. 179, 199, 880 A.2d 945 (2005) ("A defendant's failure to plead a special defense precludes the admission of evidence on the subject. . . . *It would be fundamentally unfair to allow any defendant to await the time of trial to introduce an unpleaded defense. Such conduct would result in trial by ambuscade to the detriment*

*of the opposing party."* [Emphasis added; internal quotation marks omitted.]).

The defendant also claims that the plaintiff waived any objection to the introduction of evidence related to her unconscionability defense. The defendant, relying on *Parente* v. *Pirozzoli,* supra, 87 Conn. App. 235, contends that the plaintiff first raised the issue of unconscionability by introducing the testimony of Alter, his expert on New York domestic relations law. She claims, on the basis of the introduction of Alter's testimony, that the court ruled improperly that the plaintiff had not waived his right to object to the defendant's attempt to introduce evidence related to that same issue. The defendant's reliance on *Parente* is misplaced.

In *Parente,* this court addressed whether the trial court properly declined to consider the defense of contract illegality when it was not pleaded specially and was raised for the first time in a posttrial brief. Id., 239–40. This court concluded that, because the plaintiff in that case introduced the evidence tending to support the illegality of the agreement on his own, and the matter essentially was litigated at trial, he could not later object to his opponent's reliance on this defense because it was not pleaded specially. Id., 243–44. "By introducing the supporting evidence himself . . . [he] waived any objection to its use by [his opponent]." Id., 244.

Our careful review of Alter's testimony reveals that neither the plaintiff nor the defendant raised the issue of the fairness of the premarital agreement during Alter's examination. Although the court itself raised New York Domestic Relations Law § 236, pt. B 3, it did not directly ask Alter whether, in her opinion, the agreement was fair and not unconscionable. The court's questions, rather, focused on the contours of § 236, pt. B 3, and whether that statute contained a requirement that the

court make a determination that the agreement was fair and reasonable.[15] Evidence relating to whether the agreement was not unconscionable, therefore, was not introduced by the plaintiff. Accordingly, we conclude that the court did not abuse its discretion by refusing to consider the defendant's unconscionability defense and concluded properly that the premarital agreement was enforceable.[16]

---

[15] The colloquy between the court and Alter was as follows:

"The Court: Now . . . for the court to make a determination as to whether or not the prenuptial agreement or the nuptial agreement that's there satisfies the requirements of the law, is there a requirement that this court has to make as a determination as to whether the agreements are fair?

"[The Witness]: In New York, that is not the law. . . .

"The Court: Okay. There is a section of the statute that says, 'provided that such terms were fair and reasonable at the time of the making of the agreement.'

"[The Witness]: That and not unconscionable have been held by New York law to apply only to the maintenance provisions of an agreement, and not to any other provisions of the agreement, not to equitable distribution or division of assets. But only as to maintenance or alimony.

"The Court: Okay. So, you recognize that the terms were fair and reasonable at the time of the making of the agreement is a provision of the statute.

"[The Witness]: Yes.

"The Court: And that are not unconscionable at the time of the entry of the final judgment is also a provision of the statute.

"[The Witness]: As to maintenance of alimony. Yes."

[16] On appeal, the defendant also claims that the court improperly ordered her to reimburse the plaintiff for one half of the carrying costs incurred by him in connection with the Greenwich property from the "Operative Event" date through the date of the closing on that property. She argues that the reimbursement of these costs was tantamount to an impermissible retroactive modification of pendente lite alimony. See General Statutes § 46b-86 (a) ("[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification"). This claim stems from a June 22, 2004 order from the court that directed the plaintiff to pay the defendant $11,000 per month in alimony pendente lite. That order also set forth that certain monthly carrying costs made by the plaintiff were to be deducted from this amount, and the remainder was to be forwarded to the defendant.

The defendant does not claim that the court improperly ordered her to reimburse the plaintiff for any portion of the alimony payments made directly to her. Her claim, as stated previously, is limited to the order that she reimburse the plaintiff for one half of the carrying costs paid by him. The reimbursement to the plaintiff for half of the carrying costs, however, was expressly provided for in the premarital agreement. Because we conclude that the court properly concluded that the premarital agreement was enforce-

## B

We next consider the defendant's claim that the court lacked subject matter jurisdiction to order that she repay loans and promissory notes due to the plaintiff and to award interest in connection with the repayment of any wrongfully withheld moneys. The defendant contends, essentially, that the court exceeded its statutory authority under General Statutes § 46b-81 by issuing this financial order. We are not persuaded.

Whether § 46b-81 authorized the court to order the defendant to repay loans and promissory notes made to the plaintiff during the course of their marriage and to award interest on any wrongfully withheld moneys is a question of law; hence, our review is de novo. See *Bornemann* v. *Bornemann*, 245 Conn. 508, 514–15, 752 A.2d 978 (1998); *Costa* v. *Costa*, 57 Conn. App. 165, 169–70, 752 A.2d 1106 (2000). A fundamental principle in marital dissolution proceedings is that the trial court has broad discretion in determining the equitable allocation of the parties' assets. *Casey* v. *Casey*, 82 Conn. App. 378, 386–87, 844 A.2d 250 (2004); *Werblood* v. *Birnbach*, 41 Conn. App. 728, 735–36, 678 A.2d 1 (1996). "[B]ecause every family situation is unique, the trial court drafting a dissolution decree has wide discretion to make suitable orders to fit the circumstances." *Passamano* v. *Passamano*, 228 Conn. 85, 91, 634 A.2d 891 (1993). Furthermore, "the allocation of liabilities and debts is a part of the court's broad authority in the assignment of property. *Schmidt* v. *Schmidt*, 180 Conn. 184, 191, 429 A.2d 470 (1980)." *Roos* v. *Roos*, 84 Conn. App. 415, 420, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004). The broad power of the court to fashion suitable financial orders, coupled with the

able, any financial orders rendered in accordance with the terms of that agreement, such as those concerning the plaintiff's reimbursement of carrying costs, also were proper.

defendant's failure to direct our attention to any authority holding to the contrary, persuades us to conclude that the court was empowered to award the plaintiff with moneys wrongfully withheld by the defendant in its dissolution decree.

In addition, "[t]he trial court has the discretion to decide whether to make an award of interest under General Statutes § 37-3a [which] . . . provides for interest on money detained after it becomes due and payable. . . . It is well established that we will not overrule a trial court's determination regarding an award of interest absent a clear abuse of discretion. . . . [T]here is no statutory prohibition against awarding interest on a judgment in domestic relations cases . . . because the courts may fashion remedies that are appropriate and equitable . . . . The question of whether . . . interest is a proper element of recovery ordinarily rests upon whether the detention of money is or is not wrongful. . . . When a former spouse is not justified in failing to pay sums due . . . the award of interest is proper." (Citations omitted; internal quotation marks omitted.) *Picton* v. *Picton*, 111 Conn. App. 143, 155–56, 958 A.2d 763 (2008), cert. denied, 290 Conn. 905, 962 A.2d 794 (2009). The defendant does not challenge the court's finding that the moneys due to the plaintiff were wrongfully withheld, nor does she claim that the discretionary 8 percent interest rate awarded on certain promissory notes and loans was an abuse of discretion. She instead argues, as set forth previously, that the court was without the authority to issue awards of interest on moneys she wrongfully withheld. We disagree and conclude that the court's award of interest in its dissolution decree on moneys wrongfully withheld by the defendant was within its broad power, under the statute, to resolve equitably property issues incident to the marital dissolution.

C

Next, we address the defendant's claim that the court improperly found that the "Operative Event" date, as defined by the premarital agreement, was August 28, 2000, three days before the parties' first anniversary. We disagree.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Moreira* v. *Moreira*, 105 Conn. App. 637, 640, 938 A.2d 1289 (2008).

The defendant contends that the court improperly found that the "Operative Event" date was August 28, 2000, because there was evidence that demonstrated that the parties were still "harmoniously married" as of December 22, 2002. Our thorough review of the record reveals that there is ample evidence to support the court's finding that the "Operative Event" date was in fact August 28, 2000. The premarital agreement clearly stated that the "Operative Event" date would be effective upon written notice by either party of an intent to seek a judgment of divorce. The agreement further provided that the "Operative Event" date "will be deemed to have occurred on the date the post office first attempted delivery of [the] same." The plaintiff

offered into evidence a copy of a certified letter sent to the defendant, dated August 28, 2000, which expressly stated that he intended to seek a divorce. The plaintiff also introduced the expert testimony of Alter, who opined that the "Operative Event" date was August 28, 2000. Furthermore, the defendant has failed to direct our attention to any evidence in the record that supports a finding of an alternative "Operative Event" date. She claims that an immigration petition she signed on December 22, 2002, which truthfully indicates that the parties were still legally married, demonstrated that the parties also were "harmoniously married" as of this date. The execution of this petition by the plaintiff, however, does nothing to invalidate the August 28, 2000 letter. Given this evidentiary background, we conclude that the defendant has failed in her burden to demonstrate that the court's findings were clearly erroneous.[17]

## D

We turn next to the defendant's claim that the court abused its discretion by failing to award her a portion of the plaintiff's pension plan. Specifically, she contends that because the plaintiff's pension plan from Wachtell, Lipton, Rosen and Katz was subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., her waiver of entitlement to the equitable distribution of this asset in the parties' premarital agreement was invalid. We disagree.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's

---

[17] In addition to establishing that the defendant's "Distributive Award" would be $50,000 if the date of the "Operative Event" was before the parties' first anniversary, the premarital agreement also provided that the defendant was not entitled to alimony unless the "Operative Event" occurred after the parties' first anniversary. Because we conclude that the court properly found that the "Operative Event" was August 28, 2000, three days prior to the parties' first anniversary, we also conclude that the court properly refused to award the defendant alimony.

orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Elia* v. *Elia*, 99 Conn. App. 829, 831, 916 A.2d 845 (2007).

Section 1055 of ERISA requires that accrued benefits payable to a vested participant, who does not die before the annuity's starting date, "shall be provided in the form of a qualified joint and survivor annuity . . . ." 29 U.S.C. § 1055 (a) (1). Furthermore, that section provides that "in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." 29 U.S.C. § 1055 (a) (2). That section also establishes that those benefits may be waived by a spouse only in limited circumstances.[18]

---

[18] Section 1055 (c) of title 29 of the United States Code provides in relevant part: "(1) A plan meets the requirements of [§ 1055] only if—(A) under the plan, each participant—(i) may elect at any time during the applicable election period to waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit (or both) . . . .

"(2) Each plan shall provide that an election under paragraph (1) (A) (i) shall not take effect unless—(A) (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public . . . ."

The parties' premarital agreement provided that the defendant waived her rights to any pension benefits in which the plaintiff was a participant. Specifically, in the "Waiver of Estate Rights" section, she expressly consented to the plaintiff's election to waive her qualified joint and survivor annuity and preretirement survivor annuity benefits, in accordance with 29 U.S.C. § 1055 (c). See footnote 18 of this opinion. The defendant claims, however, that this waiver was ineffective because the parties were not married at the time the premarital agreement was executed.

The defendant is correct insofar as she points out that federal courts have consistently held that marital agreements executed prior to marriage cannot contain valid spousal waivers of benefits under 29 U.S.C. § 1055. See *Hagwood* v. *Newton*, 282 F.3d 285, 291 (4th Cir. 2002) (premarital agreement did not fulfill 29 U.S.C. § 1055 [c] because it was executed by parties who were not yet married); *National Automobile Dealers & Associates Retirement Trust* v. *Arbeitman*, 89 F.3d 496, 502 (8th Cir. 1996) (agreement signed prior to marriage failed to satisfy waiver requirements of ERISA). The marital agreement in this case, however, is distinguished from those in the cases cited previously because the plaintiff and the defendant executed a modification of their original premarital agreement while they were married. The modification agreement, which declared the plaintiff's first notice of an "Operative Event" null and void, otherwise reincorporated all of the terms of the original agreement. The defendant, therefore, waived her rights to the plaintiff's pension plan benefits both before and during the course of their marriage.

Furthermore, the conclusion that premarital agreements cannot contain valid spousal waivers of benefits governed by ERISA typically has been applied only in cases in which a surviving spouse was seeking

an interest in his or her late spouse's annuity benefits. See *Hagwood* v. *Newton,* supra, 282 F.3d 287; *National Automobile Dealers & Associates Retirement Trust* v. *Arbeitman,* supra, 89 F.3d 498. When the validity of a spousal waiver has been raised in the context of a marital dissolution action, as is the case here, and the issue concerns the equitable distribution of a *living* spouse's benefits, courts have routinely held to the contrary. See, e.g., *In re Marriage of Rahn,* 914 P.2d 463, 467 (Colo. App. 1995) ("restrictions of [29 U.S.C. § 1055 (c)] are designed to protect a surviving spouse, not a surviving former spouse"); *Savage-Keough* v. *Keough,* 373 N.J. Super. 198, 208, 861 A.2d 131 (App. Div. 2004) ("it is the survivor benefit that is protected by [29 U.S.C. § 1055 (c)], not a divorcing spouse's marital interest in a surviving spouse's pension plan"); *Edmonds* v. *Edmonds,* 184 Misc. 2d 928, 932, 710 N.Y.S.2d 765 (2000) ("spousal rights under ERISA do not survive a judgment of divorce . . . and once a divorce is granted, the survivorship benefits are moot" [citation omitted]); see generally A. Feuer, "Who is Entitled to Survivor Benefits from ERISA Plans?" 40 J. Marshall L. Rev. 919, 961 (2007).

Finally, even if we assume arguendo that the defendant's waiver of her right to the equitable distribution of the plaintiff's pension plan was invalid, her claim fails. In the court's memorandum of decision, although it concluded that the plaintiff's plan was not subject to ERISA, it nevertheless issued an order, "[i]ndependent of the [premarital] agreement," that the defendant was not entitled to any of the plaintiff's retirement assets. The court found that the defendant had not made any contributions to the plaintiff's pension or retirement plans and that all of his contributions toward these plans were made before the parties were married. Under these circumstances, the court reasonably

refused to award the defendant any interest in the plaintiff's retirement assets, notwithstanding the parties' premarital and postmarital agreements. For all of these reasons, we conclude that the court did not abuse its discretion by failing to award the defendant a portion of the plaintiff's pension plan benefits.

## E

Next, the defendant claims that the court abused its discretion by failing to reimburse her for contributions she allegedly made to the Greenwich property during the parties' marriage. We disagree.

The defendant argues that the court's financial orders failed to compensate her for monetary and nonmonetary contributions she claims to have made in connection with maintaining the marital property. Although the premarital agreement does not specifically address common and ordinary expenses related to their marital residence, it does establish that any "necessary major repairs" were part of the carrying costs to be paid for by the plaintiff and to be reimbursed to him in the amount of one half of his expenditures. To the extent that the court ordered that the plaintiff be reimbursed for half of all carrying costs, including any necessary repairs, we conclude that the court properly enforced the terms of the premarital agreement. Furthermore, our thorough review of the record, including the parties' proposed orders,[19] does not highlight significant maintenance costs incurred by the defendant that are beyond the scope of necessary repairs. Accordingly, the defendant has failed to demonstrate that the court abused its broad discretion by not ordering these alleged miscellaneous expenditures to be reimbursed to her.

---

[19] The defendant's proposed order concerning the sale of the Greenwich property sought only reimbursement for necessary major repairs and made no mention of ordinary maintenance expenses.

F

We next briefly address the defendant's claim that the court abused its discretion by failing to award her attorney's fees. We decline to review the defendant's claim due to an inadequate record.

"The statutory authority for the award of counsel fees is found in General Statutes § 46b-62. . . . The court may order either party to pay the fees . . . pursuant to . . . § 46b-62, and how such expenses will be paid is within the court's discretion. . . . An abuse of discretion in granting . . . fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did. . . .

"The order for payment of . . . fees under . . . § 46b-62 requires consideration of the financial resources of both parties and the criteria set forth in . . . [General Statutes] § 46b-82. . . . Section 46b-82 instructs the court to consider, inter alia, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. . . . Although the trial court is not required to find expressly on each of the § 46b-82 factors, it must have sufficient evidence to support each factor." (Citation omitted; internal quotation marks omitted.) *Utz* v. *Utz*, 112 Conn. App. 631, 640–41, 963 A.2d 1049, cert. denied, 291 Conn. 908, 969 A.2d 173 (2009).

In this case, we cannot review whether the court's failure to award the defendant attorney's fees was proper because the record does not reveal the court's analysis in reaching this decision. Specifically, neither the memorandum of decision, nor the record on the whole, reflect whether or to what extent the court considered the criteria set forth in § 46b-82, and the defendant has not sought an articulation of the court's reasoning. See *Blum* v. *Blum*, 109 Conn. App. 316, 331,

951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . [W]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) Id. Accordingly, we decline to review the defendant's claim that the court abused its discretion by failing to award her attorney's fees.[20]

## II

### MOTION FOR CONTEMPT

The defendant also claims that the court improperly denied her motion for contempt. Specifically, she claims

---

[20] We note in passing that, notwithstanding the fact that it did not address the issue directly in its memorandum of decision, the court's refusal to award the defendant attorney's fees may have been predicated on a theory of litigation misconduct. Our Supreme Court has held that litigation misconduct can be considered in determining an award of attorney's fees under § 46b-62. See *Ramin* v. *Ramin*, 281 Conn. 324, 351, 915 A.2d 790 (2007) (en banc). It flows logically that a determination *not* to award such fees also may be occasioned on such behavior.

In the present case, the court found that "[t]he trial commenced on September 18, 2006, concluded on August 23, 2007, and took thirty-two trial dates. The [defendant or] her counsel were late for a number of trial dates. The [plaintiff] attempted to obtain discovery and the [defendant's] deposition without success . . . . The [plaintiff] tried this case without discovery since the delays caused the divorce to last almost as long as the actual marriage. The [defendant's] counsel judicially admitted in court pleadings: 'There has been a breakdown of communication. The defendant continuously refuses and/or fails to follow counsel's recommendations. The defendant holds and refuses to release discovery documents to enable the attorneys to perform their duties as counsel.' . . . The [plaintiff] has been represented by one law firm throughout this entire matter. The [defendant] changed counsel four times." (Citations omitted.)

that the court improperly determined that the plaintiff did not violate Practice Book § 25-5 (a) (1) when he transferred, without her consent, his interest in their marital home during the pendency of the dissolution action. We affirm the ruling of the court.

The following additional facts are relevant to our resolution of the defendant's claim. On October 25, 2006, the defendant filed a motion for contempt in which she claimed that the plaintiff had transferred property in violation of the automatic orders enumerated in Practice Book § 25-5 (a) (1).[21] In that motion, the defendant asserted that on October 12, 2006, while the dissolution action was pending, the plaintiff had executed and recorded a quitclaim deed transferring his interest in the Greenwich property to himself. The effect of this property transfer was a change in the parties' ownership of the property from a joint tenancy with rights of survivorship to a tenancy in common. See General Statutes §§ 47-14c[22] and 47-14j.[23] The defendant

---

[21] Practice Book § 25-5 (a) provides in relevant part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage . . .

"(1) Neither party shall sell, transfer . . . or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action. . . ."

[22] General Statutes § 47-14c provides in relevant part that "a conveyance of any interest or interests in any joint tenancy by less than all of the joint tenants to a person or persons other than one of the remaining joint tenants severs the joint tenancy as to the interest or interests so conveyed and the grantee or grantees thereof shall hold the interest or interests as tenant or tenants in common with the remaining joint tenant or tenants. . . ."

[23] General Statutes § 47-14j provides: "Any change in the nature of the interests held by joint tenants which could be effected by a conveyance or conveyances to a stranger may be effected by an instrument executed with the formalities required for deeds by the joint tenant or tenants whose interests are involved. That instrument shall not be effective until it has been recorded on the land records of the town in which the real estate is located."

claimed that because this transfer had the effect of extinguishing her right to survivorship in the event of the plaintiff's death, and was effectuated without her consent, the plaintiff violated the automatic orders. The defendant asked the court to find the plaintiff in contempt and to issue an order voiding the quitclaim deed and directing the plaintiff to pay the reasonable costs and attorney's fees that she had expended on the motion.

On March 22, 2007, the court denied the defendant's motion for contempt. The court concluded that although the Greenwich property was a marital asset, the defendant's survivorship interest was not property pursuant to Practice Book § 25-5 but, rather, was a mere expectancy interest. The court also stated that the defendant's motion raised an issue of first impression for the appellate courts of this state and that, therefore, even if it had ruled otherwise, it would have exercised its discretion and not ordered an award of attorney's fees and costs. The defendant thereafter appealed.[24]

---

[24] Although it is unclear whether the court's denial of the defendant's motion for contempt was an immediately appealable final judgment, we note that, while that appeal was pending in this court, the trial court rendered its dissolution judgment. Once this dissolution judgment was rendered and an appeal was filed from that decision and consolidated with the earlier appeal from the denial of the motion for contempt, the finality concerns surrounding the interlocutory ruling in this case no longer require resolution by this court. This court placed the defendant's appeal from the denial of her motion for contempt on its own motion calendar for dismissal for lack of a final judgment but subsequently marked the appeal off after the defendant filed her appeal of the dissolution judgment and thereafter consolidated the appeals. Even if this court were to dismiss the defendant's initial appeal for lack of a final judgment, the defendant's subsequent appeal of the dissolution judgment undoubtedly could have included her claim that the court's denial of her motion for contempt was improper; therefore, we need not address the jurisdictional issue as to whether there was a final judgment because the contempt issue is properly raised in the consolidated appeal.

As set forth previously, the defendant's motion for contempt both sought an order that the quitclaim deed be voided, thus restoring her survivorship rights in the marital property, and asked for monetary sanctions associated with bringing the motion. Because the court has ordered the disposition of the property that was the subject of the defendant's motion and no practical relief can be afforded to her, the defendant's claim is moot. Furthermore, although a finding of contempt could involve an award of costs and attorney's fees, the court stated clearly that, irrespective of its ruling, it would not have awarded attorney's fees in this case given the novelty of the legal issue presented by the defendant's motion. Accordingly, there is no reason to disturb the decision of the court because even if we were to conclude that the plaintiff had violated the automatic orders, we see no practical relief that may be awarded to the defendant. See, e.g., *State* v. *McElveen*, 117 Conn. App. 486, 489–90, 979 A.2d 604 (2009) ("it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow" [internal quotation marks omitted]), cert. granted on other grounds, 294 Conn. 924, 985 A.2d 1063 (2010).

The judgments are affirmed.

In this opinion the other judges concurred.